```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

JEAN C. BRANNOCK,                )
                                 )
        Plaintiff,                )
                                 )
    v.                           )      1:04CV00697
                                 )
JO ANNE B. BARNHART,             )
Commissioner of Social Security, )
                                 )
        Defendant.                )

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Jean C. Brannock seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying her claim for disability insurance benefits. The Commissioner's denial decision became final on June 7, 2004, when the Appeals Council concluded there was no basis to review the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

Plaintiff filed an application for disability insurance benefits on December 16, 2002, alleging disability as of September 3, 2002, due to reflex sympathetic dystrophy resulting from an automobile accident, with constant pain, and loss of use of her left arm and hand and range of motion. Her application was denied initially and on reconsideration, and plaintiff filed a request for a hearing. A hearing was held in Greensboro, North Carolina, on June 6, 2003, and a decision denying plaintiff's claim was issued on February 20, 2004. Plaintiff filed a request for review, and on June 7, 2004, the Appeals Council found no basis on which to review

the ALJ's decision. Plaintiff filed a request for judicial review in this Court on August 5, 2004.

The scope of review by this Court of the Commissioner's decision denying benefits is limited. Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The court may not reweigh conflicting evidence that is substantial in nature and may not try the case de novo. Id. "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

In reaching a decision on plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. § 404.1520 (2005). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. The burden of persuasion is on the

-2-

Case 1:04-cv-00697-NCT-RAE   Document 16   Filed 04/27/06   Page 2 of 8

claimant through the fourth step. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his or her age, education and work experience. Id.

In this case, the ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on September 3, 2002, her alleged onset date of disability, and remained insured until December 31, 2007. (Tr. at 14) At step one of the sequential evaluation, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since September 3, 2002, her alleged onset date of disability. (Id. at 15)

The second step in the sequential evaluation process is to determine whether plaintiff has a severe impairment. A severe impairment is one which, either separately or in combination with another impairment, significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c)(2005). At step two, the ALJ found that plaintiff had the severe impairment of reflex sympathetic dystrophy/complex regional pain syndrome. (Tr. at 15)

At step three of the sequential evaluation, the ALJ found that plaintiff did not have an impairment, or combination of impairments, that met or equaled a listing in Appendix 1, Subpart P, Regulation Number 4. (Id.) At step four, the ALJ concluded plaintiff did not have the capacity to meet the demands to perform her relevant past work as a contract administrator or a clerk-

-3-

typist, but that she was able to perform light work which required only limited fingering with her left hand. (Id. at 18-19)  This put the case at step five of the sequential analysis where the burden of persuasion shifts to the Commissioner to show plaintiff can perform other work.  For this purpose, the ALJ called a Vocational Expert ("VE").  Considering the VE's testimony, the ALJ held that the plaintiff was "not disabled," as defined by the Social Security Act, at any time through February 20, 2004, the date of the ALJ's decision. (Id. at 20)

Plaintiff raises one issue for review.  She argues that the ALJ erred at step five of the sequential evaluation because all of the jobs propounded by the vocational expert require modifications in order to accommodate plaintiff's severe impairment of reflex sympathetic dystrophy/complex regional pain syndrome.  (Docket No. 10, Pl.'s Br. at 5-9) Plaintiff's argument is based on the VE's statement on cross-examination that the jobs of purchasing agent, DOT # 162.157-038; financial report services or credit services, DOT # 250.357-026; and insurance clerk, DOT # 219.367-014, all require occasional bimanual dexterity.  (Tr. at 262)  Plaintiff further contends that the medical evidence reflects that plaintiff's use of her left hand is severely compromised.  (Docket No. 10, Pl's Br. at 5-9, citing Tr. at 262)

In her opinion, the ALJ found that plaintiff retains the residual functional capacity for work at a light exertional level, so long as she performs limited fingering with her left hand. (Id. at 18-19)  The ALJ's review of the medical evidence, as well as the

review of this Court, indicates that plaintiff suffered a fracture of her 5th metacarpal in an automobile accident in April of 2002. (Tr. at 16-17, 130, 220) She underwent serial splinting physical therapy Wake Forest University Baptist Medical Center ("WFUBMC"), but began having "swelling and increasing pain" and "continuing contractures and decreased range of motion." (Id. at 130) A bone scan on August 19, 2002 "indicated a pattern consistent with reflex sympathetic dystrophy involving [plaintiff's] left upper extremity," and Dr. David S. Ruch, a Hand and Microsurgeon in the Department of Orthopaedic Surgery at WFUBMC and plaintiff's treating physician, performed a carpal tunnel release and a pronator release on plaintiff's left hand and arm on September 19, 2002. (Id. at 17)

On January 15, 2003, Dr. Ruch saw plaintiff for a follow-up visit. (Id. at 215) Dr. Ruch stated that although plaintiff had no pain and minimal swelling, she did have "a fixed contracture at the [proximal interphalangeal] joints of 70 degrees. She has had no progress in Therapy. She reports she is very pleased." (Id.) On September 26, 2003, plaintiff was discharged from physical therapy at WFUBMC with a note that she was "[s]till unable to wash hair or type with left hand." (Id. at 217)

With respect to the medical evidence, the ALJ determined that plaintiff has a significant nonexertional limitation, which she characterized as a limited ability to perform fingering functions with her left hand. (Id. at 20) She further found plaintiff could perform light work with the aforesaid limitation. Next, the VE

-5-

testified at the hearing, and the ALJ found, that plaintiff acquired skills at her past relevant work as a contract administrator and clerk-typist that were transferrable to skilled and semiskilled jobs that exist at the light exertional level. (Id.) The jobs identified by the VE were purchasing agent, DOT # 162.157-038; financial report services or credit services, DOT # 250.357-026; and insurance clerk, DOT # 219.367-014, all of which, according to the VE require "occasional fingering and handling . . . up to one-third of a workday." (Id. at 260-61)

On cross-examination, the VE further clarified the situation. He testified that:

> any of these jobs are going to be primarily performed with people who are using both hands up to that occasional level throughout the workday, whether it's using the non-dominant hand for simply holding something as part of their work or as a support or whatever it may be. Obviously, they're not using their non-dominant hand for writing, but for typing, you use both hands. So it would obviously require -- it would require some adjustment or some accommodation from what the typical worker would do.

(Id. at 262)

The Commissioner argues that plaintiff's attorney altered the ALJ's hypothetical so that it only applied to persons who have use of one hand. (Pl.'s Br. at 11) She claims the attorney asked the VE to opine about persons who had "no significant use of one upper extremity" and states that those words are found at Tr. 262–265. That limitation is indeed found at Tr. 264, but it did not have any bearing on the attorney's previous questions and the VE's answers. In fact, the VE said that if a person had no significant use of an

upper extremity (as opposed to fixed contractions of the left hand at 70 degrees (Tr. at 262)), the jobs would <u>also</u> have to have accommodations because the jobs are performed bi-manually (Tr. at 264).  The VE made clear that whether the person had no use of a left upper extremity or a contracture of the left hand, accommodations would have to be made.  (Tr. at 265)

Consequently, the Court rejects the Commissioner's argument that the VE identified jobs which plaintiff could perform. Instead, the evidence indicates that these jobs would require accommodation.  The ALJ did not address the issue of accommodation even though the attorney raised it at the end of the hearing.  (Tr. at 266)  In her brief, the Commissioner now argues that the three jobs identified by the VE were only three examples of semi-skilled or skilled positions for which plaintiff's skills are transferrable.  It is true that the ALJ directed the VE to only select three jobs.  Thereafter, both the ALJ and the attorney limited their discussion to the these three jobs.  The Commissioner now argues that there may be other jobs which plaintiff could perform that do not require bi-manual operation or use of the left hand for grasping or typing  It does not appear that the Commissioner challenges plaintiff's statement that if a person cannot perform a job unless it is modified, she will be considered disabled.

From all this, it may be definitely stated that the Commissioner's decision at step five is not based on substantial evidence.  The harder question is whether this case should be

remanded in order to give the Commissioner an opportunity to identify other positions which enable a person to work with limited fingering ability of the left hand with no ability to grasp or type. Because the ALJ limited the VE to three jobs and because there is no indication that all jobs require the bi-manual usage of arms and fingers as do the three jobs identified by the VE, the case should be remanded to the Commissioner to conduct a further hearing at step five the sequential evaluation process in order to identify jobs which plaintiff could perform that do not involve typing or grasping with the left hand.

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for judgment reversing the Commissioner (docket no. 9) be granted, that defendant's motion for judgment on the pleadings (docket no. 13) be denied, and that this action be remanded for further proceedings consistent with this Recommendation.

_____
United States Magistrate Judge

April 27, 2006

-8-